UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ X
ALYSSA YANNELLO and KATIE MORT, on behalf of themselves and all others similarly situated,

                       Plaintiffs,

        -against-

SSA GROUP, LLC a/k/a SSA GROUP NEW YORK,

                      Defendant.
------------------------------------------------------------------------ X

No. 23 Civ. 6452

**COLLECTIVE AND CLASS ACTION COMPLAINT**

**JURY TRIAL REQUESTED**

Plaintiffs Alyssa Yannello and Katie Mort (collectively, "Plaintiffs"), on behalf of themselves and all others similarly situated, by their attorneys Pechman Law Group PLLC, complaining of defendant SSA Group, LLC a/k/a SSA Group New York ("SSA" or "Defendant"), allege:

**NATURE OF THE ACTION**

1. Plaintiffs worked as food service employees in food and concession stands at Seneca Park Zoo. Throughout Plaintiffs' employment, SSA did not pay Plaintiffs and other hourly-paid workers for all of their hours worked. In particular, SSA would automatically deduct thirty minutes from the working time of hourly-paid employees who worked shifts longer than five hours, even if the employees did not take a break. SSA also failed to provide its employees with accurate wage statements with each payment of wages, as required by the Wage Theft Prevention Act. Last, Plaintiffs and other hourly-paid food service workers were "manual workers" who spent more than 25% of their work time performing duties that were physical in nature, yet SSA unlawfully paid them on a biweekly basis.

2. Plaintiffs bring this action on behalf of themselves and all other similarly situated hourly-paid food service workers of SSA (the "Food Service Workers") to recover unpaid minimum and overtime wages, liquidated damages, statutory damages, pre- and post-judgment interest, and attorneys' fees and costs pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), Articles 6 and 19 of the New York Labor Law ("NYLL"), and the New York Wage Theft Prevention Act ("WTPA").

## JURISDICTION

3. This Court has subject matter jurisdiction of this case pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. §§ 1331 and 1337, and it has supplemental jurisdiction over Plaintiffs' claims under the NYLL pursuant to 28 U.S.C. § 1367.

## VENUE

4. Venue is proper in the Western District of New York under 28 U.S.C. § 1391, because the events giving rise to Plaintiffs' claims took place in Seneca Park Zoo, which is located in this district.

## THE PARTIES

**Plaintiff Alyssa Yannello**

5. Alyssa Yannello resides in Monroe County, New York.

6. Yannello worked as an "administrative operations manager" and food service worker at Seneca Park Zoo from January 2021 through May 2023. SSA directly employed her from October 2021 through to the end of her employment.

7. As an administrative operations manager, Yannello was primarily responsible for supervising food service workers, reporting nightly sales, and contacting vendors. However, she spent a minimum of two to three hours per day at various food and retail stands across Seneca Park Zoo performing regular food service duties whenever the locations were busy or they were short staffed. This included operating

2

cash registers, preparing food, bartending, unloading and organizing supplies and merchandise, and assisting in the maintenance and cleaning of work stations.

8. Yannello was paid on an hourly basis throughout her employment.

9. Yannello's wages were typically less than $900 per workweek.

**Plaintiff Katie Mort**

10. Katie Mort resides in Monroe County, New York.

11. Mort worked as a food service worker at Seneca Park Zoo from May 2020 to January 2023.  SSA directly employed her from October 2021 through to the end of her employment.

12. As a food service worker, Mort operated cash registers, prepared food, barbacked, unloaded and organized supplies and merchandise, and assisited in the maintenance and cleaning of work stations.

13. Mort was paid on an hourly basis throughout her employment.

**Defendant SSA Group, LLC a/k/a SSA Group New York**

14. Defendant SSA Group, LLC is a Colorado Limited Liability Company registered in New York as SSA Group New York.

15. SSA's corporate headquarters is located at 4624 N Central Park, Denver Colorado 80238.

16. Founded in 1971 as Service Systems Associates, SSA is an integrated food, retail, and ticketing service that provides logistics support and staff for public attractions across thirty-two states, including New York.  SSA has over 8,000 employees across seventy-nine partnerships with zoos, aquariums, botanical gardens, museums, and other attractions throughout the country.

17. SSA is present at three other locations in New York besides the Seneca Park Zoo. SSA implements the same employment and pay practices across all four of its New York worksites.

18. As an entity that operates food and retail stands across multiple states, SSA is an "enterprise engaged in interstate commerce" within the meaning of the FLSA.

19. SSA has employees engaged in interstate commerce or in the production of goods for interstate commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for interstate commerce by any person.

20. In each of the three years preceding the filing of this Complaint, SSA's annual gross volume of sales exceeded $500,000.

## FACTUAL ALLEGATIONS

**Alyssa Yannello's Hours Worked and Wages Paid**

21. During the slower months at SSA, from November through January, Yannello's work schedule varied, but she would typically work approximately thirty-five to forty-five hours across five-day workweeks.

22. During the busier months at SSA, from February through October, Yannello's work schedule varied, but she would typically work approximately forty to fifty-five hours across five-day workweeks.

23. Throughout her employment, SSA paid Yannello $21 per regular hour and $31.50 per overtime hour.

24. Throughout her employment, SSA paid Yannello on a biweekly basis. For example, on February 24, 2023, SSA paid Yannello her wages earned in the period of February 6 to February 19, 2023, twelve days after the end of the first week in the pay period. An image of the Yannello's wage statement for this pay period is included below:

4

  

**Katie Morts's Hours Worked and Wages Paid**

25. During the slower months at SSA, from November through January, Mort's work schedule varied, but she would typically work approximately thirty to thirty-five hours across five-day workweeks.

26. During the busier months at SSA, from February through October, Mort's work schedule varied, but she would typically work approximately thirty-five to forty-four hours across five-day workweeks.

27. From August 2021 through May 2022, Mort only worked two days on the weekends, or approximately twelve to eighteen hours per week.

28. From October 2021 though May 2022, SSA paid Mort $15 per regular hour.

29. From June 2022 though to the end of her employment, SSA paid Mort $16 per regular hour and $24 per overtime hour.

30. Throughout her employment, SSA paid Mort on a biweekly basis. For example, on July 29, 2022, SSA paid Mort her wages earned in the period of July 11 to July 24, 2022, twelve days after the end of the first week in the pay period. An image of the Mort's electronic wage statement for this pay period is included below:



### SSA's Policies Applicable to Plaintiffs and other Food Service Workers

31.     Throughout Plaintiffs' employment, SSA automatically deducted thirty minutes of working time from Plaintiffs' and other Food Service Workers' time worked per day for meal breaks whenever the employees worked shifts longer than five hours. SSA would deduct the meal break time even if the employees did not take the break.

32.     Plaintiffs and Food Service Workers routinely worked through meal breaks during Seneca Park Zoo's busy season from February to October each year.

33.     During the busy season, Plaintiff Yannello would work through a lunch break four to five times a week. Despite not taking the thirty-minute lunch break, SSA deducted the full thirty minutes from Plaintiff Yannello's working time on each of these workdays.

6

34. For example, for approximately the workweek of January 30 to February 5, 2023, SSA paid Plaintiff Yannello for 43.4667 hours worked after deducting thirty minutes per workday for meal breaks. Plaintiff Yannello worked, but was not paid for, approximately 2.5 additional hours on this workweek because she did not take the breaks deducted.

35. During the busy season, Plaintiff Mort would work through the break three to five times a week during Seneca Park Zoo's busy season. Despite this, SSA deducted the full thirty minutes from her working time each workday.

36. For example, for approximately the workweek of July 11 to July 17, 2023, SSA paid Plaintiff Mort for 49.66 hours worked after deducting thirty minutes per workday for meal breaks. Plaintiff Mort actually worked, but was not paid for, approximately 2.5 additional hours on this workweek because she did not take the breaks.

37. Throughout Plaintiffs' employment, SSA paid all Food Service Workers across all four of its worksites in New York State on a biweekly basis.

38. Throughout Plaintiffs' employment, the workweek at SSA started on Monday and ended on Sunday. SSA paid all Food Service Workers their wages earned in each two-week period five days after the end of the second workweek and twelve days after the end of the first workweek.

39. As their primary work duties at Seneca Park Zoo, Food Service Workers, including Plaintiffs, spent more than 25% of their workdays performing physical work duties, including unloading and organizing shipments of ingredients and merchandise, preparing food, bartending, operating cash registers, mopping, sweeping, and other physical tasks normally associated with the operation of food and retail spaces.

40. SSA does not hold a variance from the New York State Department of Labor ("NYSDOL") allowing it to pay its manual workers more than seven days after the end of a weekly pay period.

41. As a result of and in combination with its time shaving policies, Defendant failed to furnish Plaintiffs and other Food Service Workers with wage statements with each payment of their wages accurately reflecting all of their hours worked throughout their respective employment periods.

## COLLECTIVE ACTION ALLEGATIONS

42. Plaintiffs bring this action on behalf of themselves and all similarly situated persons who have worked as Food Service Workers for SSA at one of it's New York locations within the three years prior to the filing of this Complaint and who elect to opt-in to this action (the "FLSA Collective").

43. The FLSA Collective consists of over two hundred Food Service Workers across SSA's four New York locations who have been victims of Defendant's common policy and practices that have violated their rights under the FLSA by, *inter alia*, unlawfully failing to pay them the required regular or overtime rate for hours worked. More specifically, Plaintiffs and the FLSA Collective were unlawfully deducted thirty minutes each day as a "meal break" whenever they worked shifts longer than five hours in a day, regardless of whether they actually took the full break.

44. Throughout Plaintiffs' employment, Plaintiffs and the FLSA Collective were unlawfully deducted thirty minutes each day as a "meal break" whenever they worked shifts longer than five hours in a day, performed similar food service duties, and have been subjected to Defendant's common pay policies depriving them of any wages for these hours worked, including the overtime rate of time and a half when these hours were over forty in a workweek.

45. Defendant is aware, or should have been aware, that the FLSA required them to pay Food Service Workers for all hours worked and that unwarranted deductions of time are unlawful.

46. Defendant's unlawful conduct has been intentional, willful, and in bad faith and has caused significant monetary damage to Plaintiffs and the FLSA Collective.

47. The FLSA Collective would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join the present lawsuit. All similarly situated Food Service Workers can be readily identified and located through Defendant's records. The similarly situated Food Service Workers should be notified of and allowed to opt-in to this action pursuant to 29 U.S.C. § 216(b).

## CLASS ACTION ALLEGATIONS

48. Plaintiffs bring the claims in this Complaint arising out of the NYLL under Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and a class consisting of all similarly situated non-exempt Food Service Workers who work, or have worked, for SSA at one of it's New York locations since at least August 2017 (the "Rule 23 Class").

49. The employees in the Rule 23 Class are so numerous that joinder of all members is impracticable.

50. The size of the Rule 23 Class is at least two hundred individuals, although the precise number of such employees is unknown. Facts supporting the calculation of that number are presently within the sole control of Defendant.

51. Defendant has acted or has refused to act on grounds generally applicable to the Rule 23 Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Rule 23 Class as a whole.

52. Common questions of law and fact exist as to the Rule 23 Class that predominate over questions affecting them individually including, inter alia, the following:

   a. whether Defendant violated NYLL Article 6, § 190, *et seq.*, and Article 19, § 650, *et seq.*, and the supporting NYSDOL regulations, 12 N.Y.C.R.R. Part 146, as alleged herein;

   b. whether Defendant failed to pay non-exempt employees at the correct minimum wage rate for all regular hours (*i.e.* hours up to forty in a week);

   c. whether Defendant failed to pay non-exempt employees at the correct overtime rate for all time worked in excess of forty hours per week;

   d. whether Defendant failed to provide non-exempt employees with accurate wage statements as required by the NYLL and WTPA;

   e. whether Defendant failed to pay Food Service Workers, who were manual laborers, on a weekly basis, in violation of NYLL § 191(1)(a); and

   f. the nature and the extent of the class-wide injury and the measure of damages for those injuries.

53. Plaintiffs' claims are typical of the claims of the Rule 23 Class they seek to represent. Plaintiffs and the members of the Rule 23 Class work, or have worked, for Defendant at various times within the applicable six-year statutory period. They enjoy the same statutory rights under the NYLL to be paid at the overtime rate for all hours worked over forty in a workweek. Plaintiffs and the members of the Rule 23 Class have sustained similar types of damages as a result of Defendant's failure to comply with the NYLL.

54. Plaintiffs and the Rule 23 Class have all been injured in that they have been under-compensated due to Defendant's common policies, practices, and patterns of conduct.

55. Plaintiffs will fairly and adequately represent and protect the interests of the members of the Rule 23 Class.

56. Plaintiffs have retained legal counsel competent and experienced in wage and hour litigation and class action litigation.

57. There is no conflict between Plaintiffs and the Rule 23 Class members.

58. A class action is superior to other available methods for the fair and efficient adjudication of this litigation. The members of the Rule 23 Class have been damaged and are entitled to recovery as a result of Defendant's common policies, practices, and procedures. Although the relative damages suffered by the individual class members are not de minimis, such damages are small compared to the expense and burden of individual prosecution of this litigation. Individual plaintiffs lack the financial resources necessary to conduct a thorough examination of Defendant's compensation practices and to prosecute vigorously a lawsuit against Defendant to recover such damages. In addition, class action litigation is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendant's practices.

59. This action is properly maintainable as a class action under Rule 23(b)(3) of the Federal Rules of Civil Procedure.

### FIRST CLAIM
### (NYLL – Unpaid Minimum Wages)

60. Plaintiffs repeat and incorporate all foregoing paragraphs by reference.

61. The NYLL and its supporting NYSDOL regulations require employers to pay employees at least the minimum wage rate for the first forty hours worked in a workweek. *See* N.Y. Lab. Law § 652; 12 N.Y.C.R.R. § 146–1.2(a)(1)(iii).

62. Defendant is an employer within the meaning of the NYLL §§ 190, 651(6), and 652, and NYDOL regulations, including but not limited to 12 NYCRR § 146 *et seq.*

63. Defendant employed Plaintiffs and the Rule 23 Class within the meaning of the NYLL.

64. As a result of Defendant's wage payment practices, it failed to pay Plaintiffs and the Rule 23 Class the minimum wages to which they were entitled under the NYLL and its supporting NYSDOL regulations.

65. Defendant willfully violated the NYLL by knowingly and intentionally failing to pay Plaintiffs and the Rule 23 Class minimum wages.

66. As a result of Defendant's willful violations of the NYLL, Plaintiffs and the Rule 23 Class suffered damages and are entitled to recover their unpaid minimum wages, liquidated damages, pre- and post-judgment interest, and reasonable attorney's fees and costs.

**SECOND CLAIM**
**(FLSA– Unpaid Overtime)**

67. Plaintiffs repeat and incorporate all foregoing paragraphs by reference.

68. Defendant has willfully violated the FLSA by knowingly and intentionally failing to pay Plaintiffs and the FLSA Collective overtime wages at the rate of one and one-half their regular hourly wage rates, which cannot be less than the applicable minimum wage rate, per hour worked in excess of forty per workweek.

69. Defendant is an employer within the meaning of 29 U.S.C. §§ 203(d) and 207(a) and employed Plaintiffs and the FLSA Collective.

70. As a result of its time shaving policies, Defendant violated the FLSA and its interpretive regulations by failing to pay Plaintiffs and the FLSA Collective for all hours worked in workweeks in which they worked more than forty hours. *See* 29 C.F.R. § 778.315.

71. Defendant has not made a good faith effort to comply with the FLSA with respect to Plaintiffs' and the FLSA Collective's compensation.

72. Defendant was aware, or should have been aware, that the practices described in this Complaint were unlawful and have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiffs and the FLSA Collective.

73. Due to Defendant's violations of the FLSA, Plaintiffs and the FLSA Collective are entitled to recover their unpaid overtime wages, liquidated damages, reasonable attorneys' fees and costs of the action, and pre- and post-judgment interest.

### THIRD CLAIM
### (NYLL – Unpaid Overtime)

74. Plaintiffs repeat and incorporate all foregoing paragraphs by reference.

75. Pursuant to the NYLL and supporting NYSDOL Regulations, Defendant was required to pay Plaintiffs and the Rule 23 Class one and one-half (1½) times their regular hourly rates of pay for all hours worked in excess of forty per workweek.

76. Defendant is an employer within the meaning of the NYLL §§ 190, 651(6), and supporting NYDOL Regulations, and employed Plaintiffs and the Rule 23 Class.

77. Defendant failed to pay Plaintiffs and the Rule 23 Class overtime wages equal to one and one-half (1½) times their regular hourly rates of pay, which could not be less than the minimum wage rate, per hour worked in excess of forty per workweek.

78. Defendant has willfully violated the NYLL by knowingly and intentionally failing to pay Plaintiffs and the Rule 23 Class overtime wages.

79. Due to Defendant's willful violations of the NYLL, Plaintiffs and the Rule 23 Class are entitled to recover their unpaid overtime wages, liquidated damages, pre- and post-judgment interest, and reasonable attorneys' fees and costs of the action.

## FOURTH CLAIM
### (NYLL § 191 – Frequency of Payments)

80. Plaintiffs repeat and incorporate all foregoing paragraphs by reference.

81. In 1967, the New York State legislature amended NYLL § 198 to impose "stronger sanctions" in the form of liquidated damages to compel employers to comply with the requirements of Article 6 of the NYLL, including the frequency of payment requirements set forth in Section 191 of the NYLL. These "stronger sanctions" serve to "compensate the employee for the loss of the use of money to which he [or she] was entitled," as is the case with late wage payments, because an employee loses "the use of money [when] he or she is never paid, partially paid, or paid late." *Vega v. CM & Assocs. Constr. Mgt., LLC*, 175 A.D.3d 1144, 1146 n. 2 (1st Dep't 2019) (citation omitted). This concept is not new. For decades, the United States Supreme Court has likewise interpreted the FLSA, 29 U.S.C. § 201 *et seq.*, on which the NYLL is based, as entitling employees to recover liquidated damages "regardless of whether an employee has been paid wages owed before the commencement of the action." *Id.* (quoting *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 707 (1945)).

82. Defendant violated Section 191 of the NYLL by paying their Food Service Workers wages on a bi-weekly basis. As "manual workers" within the meaning of the NYLL, they should have been paid "weekly and not later than seven calendar days after the end of the week the[ir] wages are earned." N.Y. Lab. L. § 191(1)(a)(i).

83. Throughout their employment, Food Service Workers, including Plaintiffs, spent more than 25% of their working time performing physical tasks.

84. Food Service Workers, including Plaintiffs, were "manual workers" within the meaning of NYLL § 191(1)(a).

85. Defendant should have paid Food Service Workers, including Plaintiffs, on a weekly basis, "and not later than seven calendar days after the end of the week in which the wages were earned." N.Y. Lab. L. § 191(1)(a).

86. Because Defendant failed to pay Food Service Workers, including Plaintiffs, on a weekly basis, in addition to other recovery available to them as set forth in this Complaint, Food Service Workers are entitled to recover liquidated damages equal to their wages paid a week late in every biweekly pay period.

## FIFTH CLAIM
### (NYLL – Failure to Provide Accurate Wage Statements)

87. Plaintiffs repeat and incorporate all foregoing paragraphs by reference.

88. Defendant failed to furnish Plaintiffs and the Rule 23 Class, with each wage payment, with a statement accurately listing: rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages; in violation of NYLL § 195(3).

89. Due to Defendant's violation of the NYLL, § 195(3), Plaintiffs and the Rule 23 Class are entitled to recover from the Defendant liquidated damages of $250 per workday, up to a maximum of $5,000, reasonable attorneys' fees, and costs and disbursements of the action, pursuant to the NYLL § 198(1-d).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves, the FLSA Collective, and the Rule 23 Class, respectfully request that this Court:

a. certify this case as a class action pursuant to Rule 23 for the class of employees described herein, certify Plaintiffs as the class representatives, and designate Plaintiffs' counsel as Class Counsel;

b. designate this action as a collective action on behalf of the FLSA Collective and authorize the prompt issuance of a notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b);

c. declare that Defendant violated the minimum wage provisions of the NYLL;

d. declare that Defendant violated the overtime wage provisions of the FLSA and the NYLL;

e. declare that Defendant violated the frequency of payments provision of the NYLL;

f. declare that Defendant violated the record-keeping provisions of the NYLL and WTPA;

g. declare that Defendant violated the wage statement provisions of the NYLL and WTPA;

h. declare that Defendant's violations of the FLSA and NYLL were willful;

i. award Plaintiffs and the Rule 23 Class unpaid minimum wages;

j. award Plaintiffs, the FLSA Collective, and the Rule 23 Class unpaid overtime wages;

k. award Plaintiffs and the Rule 23 Class liquidated damages as a result of Defendant's failure to pay wages on a weekly basis in violation of the NYLL;

16

l.  award Plaintiffs and the Rule 23 Class statutory damages as a result of Defendant's failure to furnish them with accurate wage statements at the end of each pay period, in violation of the NYLL and WTPA;

m.  award Plaintiffs, the FLSA Collective, and the Rule 23 Class liquidated damages pursuant to the FLSA and the NYLL;

n.  award Plaintiffs and the Rule 23 Class pre- and post-judgment interest under the NYLL;

o.  award Plaintiffs, the FLSA Collective, and the Rule 23 Class reasonable attorneys' fees and costs of the action pursuant to the FLSA and the NYLL; and

p.  award such other and further relief as the Court deems just and proper.

(This space was intentionally left blank)

**JURY TRIAL DEMANDED**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury in this action.

Dated: New York, New York
August 10, 2023

PECHMAN LAW GROUP PLLC

By: _____
Louis Pechman
Gianfranco Cuadra
Christian Mercado
Pechman Law Group PLLC
488 Madison Avenue, 17th Floor
New York, New York 10022
Tel.: (212) 583-9500
pechman@pechmanlaw.com
cuadra@pechmanlaw.com
mercado@pechmanlaw.com

*Attorneys for Plaintiffs, the Putative FLSA Collective, and Putative Rule 23 Class*